UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| EVANNE C.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 2:25-cv-00863<br><br>Magistrate Judge Daphne A. Oberg |

Evanne C.[1] brought this action for judicial review of the denial of her application for disability insurance benefits and supplemental security income.[2] The administrative law judge (ALJ) who addressed Ms. C.'s application determined she did not qualify as disabled.[3] Ms. C. argues the ALJ improperly found her capable of "frequent feeling" based on lay opinion, after rejecting all medical opinions regarding manipulative limitations.[4] As explained below, the ALJ applied the correct legal standards, and

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in court orders in certain cases, including social security cases, the plaintiff is referred to by first name and last initial only.

[2] (Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. (Tr.) 10–23, Doc. No. 10.)

[4] (*See* Opening Br. 1, 6, Doc. No. 13.)

substantial evidence supports her findings. Accordingly, the Commissioner's decision is affirmed.[5]

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of the Commissioner's final decision. This court reviews the ALJ's decision to determine whether substantial evidence supports her factual findings and whether she applied the correct legal standards.[6] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 5.)

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation omitted).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

administrative agency's findings from being supported by substantial evidence."[11] And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[14]

To determine if a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;
2) she has a severe medically determinable physical or mental impairment;
3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);
4) she has the residual functional capacity to perform past relevant work; and

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[14] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[15]

In the first four steps, the claimant has the burden of establishing disability.[16] And at step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[17]

**PROCEDURAL HISTORY**

Ms. C. applied for disability insurance benefits and supplemental security income.[18] After an administrative hearing,[19] the ALJ issued a decision, finding Ms. C. not disabled and denying benefits.[20]

At step two of the sequential evaluation, the ALJ found Ms. C. had severe impairments of degenerative disc disease of the lumbar and cervical spine, obesity, and bipolar disorder.[21] The ALJ determined Ms. C. also had nonsevere impairments of

---

[15] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] (*See* Tr. 305–26.)

[19] (Tr. 51–76.)

[20] (Tr. 10–23.)

[21] (Tr. 13.)

hypertension and a torn meniscus.[22] At step three, the ALJ concluded Ms. C.'s impairments did not meet or medically equal an impairment listing.[23]

The ALJ then found Ms. C. had the residual functional capacity (RFC) to perform "light work" with certain limitations:

> [S]he can frequently balance, occasionally stoop, kneel, crouch, crawl, climb ramps, and climb stairs, and frequently feel with her dominant right upper extremity. The claimant can never climb ladders, ropes, or scaffolds, and she can have no exposure to workplace hazards, including unprotected heights and moving mechanical parts. She can perform simple, routine tasks, but not at a production rate pace, while she can make simple work-related decisions, have occasional interaction with supervisors, occasional superficial interaction with coworkers, and no interaction with the public.[24]

At step four, the ALJ determined Ms. C. had no past relevant work.[25] But at step five, based on her RFC and the testimony of a vocational expert, the ALJ found Ms. C. capable of jobs in the national economy.[26] Accordingly, the ALJ concluded Ms. C. was not disabled and denied her claims.[27] This decision became final when the Appeals Council denied Ms. C.'s request for review.[28]

---

[22] (*Id.*)

[23] (Tr. 13–15.)

[24] (Tr. 15–16.)

[25] (Tr. 20.)

[26] (Tr. 21–22.)

[27] (Tr. 22.)

[28] (Tr. 1–3.)

## ANALYSIS

Ms. C. raises a single claim of error relating to the RFC determination: she argues the ALJ improperly found her capable of "frequent feeling" based on lay opinion, after rejecting all medical opinions regarding manipulative limitations.[29]

A claimant's RFC reflects the most she can do in a work setting considering her limitations.[30] In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."[31] The ALJ considers all relevant evidence in the record.[32]

In assessing RFCs, ALJs must consider the persuasiveness of medical opinions and prior administrative medical findings—and explain how they consider the supportability and consistency of opinion evidence.[33] But "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."[34] "[T]he ALJ, not a physician, is charged

---

[29] (*See* Opening Br. 1, 6, Doc. No. 13.)

[30] *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).

[31] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[32] *See* 20 C.F.R. §§ 404.1545(a)(3) 416.945(a)(3).

[33] 20 C.F.R. §§ 404.1520c, 416.920c.

[34] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

with determining a claimant's RFC from the medical record."[35] This is because "[t]he determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities."[36]

Here, the ALJ reviewed prior administrative findings from state agency medical consultants, who found Ms. C. had no manipulative limitations.[37] While the ALJ considered the consultants persuasive on some issues, she found they "did not adequately address the specific findings as to [Ms. C.'s] cervical radiculopathy, which caused right hand sensory deficits at multiple examinations."[38] The ALJ then considered a medical opinion from Ms. C.'s treating provider, Alex Childs, PA-C.[39] Mr. Childs opined Ms. C. could never reach, handle, finger, or feel with either hand (among other limitations).[40] The ALJ found this opinion largely unpersuasive.[41] As she explained, Mr. Childs provided "insufficient objective citation to support his opinion," where he only cited MRI findings and a single examination showing mild lower extremity

---

[35] *Id.* (alteration in original) (citation omitted).

[36] *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (unpublished); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[37] (*See* Tr. 20.)

[38] (*Id.*)

[39] (*See id.*)

[40] (*See id.*)

[41] (*Id.*)

weakness.[42] The ALJ concluded the opined manipulative limitations "were an exaggeration" because "the evidence (including [Mr. Childs'] own) . . . shows a few instances of right upper extremity sensory deficits, but nothing in terms of the left upper extremity, weakness in either hand, or other issues that would make them essentially unusable, as Mr. Childs indicated."[43]

In the absence of persuasive medical opinion evidence on this issue, the ALJ relied on other evidence to determine Ms. C.'s manipulative limitations. Specifically, she stated: "The abnormal sensation noted in the claimant's right upper extremity in 2020 and 2021 also led me to find that she could frequently feel with that extremity, though I did not find adequate support for any greater level of limitation because subsequent examination records did not reflect similar findings."[44]

The ALJ did not err in assessing Ms. C.'s manipulative limitations without relying on medical opinion evidence. Faced with conflicting opinions on this issue, she adopted a middle ground—an approach the Tenth Circuit has approved.[45] And the ALJ adequately explained her rationale for the middle-ground manipulative limitation. She

---

[42] (*Id.*)

[43] (*Id.* (citing Tr. 490–555, 629–48, 671–94, 701–12, 720–31 (hearing exhibits B4F, B12F, B14F, B16F, B17F, and B19F)).)

[44] (Tr. 17.)

[45] *See Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016) ("Faced with [] conflicting opinions [regarding manipulative limitations], the administrative law judge adopted a middle ground. . . . In this manner, the judge arrived at an assessment between the two medical opinions without fully embracing either one. We upheld this approach in *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).").

noted the record contained a few instances of right upper extremity sensory deficits and abnormal sensation for part of the relevant time period—but no evidence of left upper extremity limitations, weakness in either hand, or other issues making Ms. C.'s hands unusable.[46] The evidence the ALJ cited is more than a "mere scintilla"[47] and qualifies as substantial evidence supporting her findings.[48]

Ms. C. contends the ALJ based her findings on improper lay interpretation of raw medical data.[49] But nothing in ALJ's decision suggests this. The ALJ cited medical providers' observations and assessments—not her own interpretation of raw medical data.[50] And it fell properly within her role to determine Ms. C.'s RFC limitations based on the medical record.[51]

---

[46] (Tr. 17, 20 (citing Tr. 490–555, 629–48, 671–94, 701–12, 720–31).) Ms. C. notes that the ALJ's initial discussion of manipulative limitations lacks any citation to record evidence, (*see* Tr. 17), but the ALJ cited examination records relating to manipulative limitations when discussing opinion evidence on this issue, (*see* Tr. 20).

[47] *Biestek*, 587 U.S. at 103.

[48] (*See, e.g.*, Tr. 498, 503, 516 (documenting Ms. C.'s reports of numbness or "abnormal" sensation in her right upper extremity).)

[49] (Opening Br. 6–7, Doc. No. 13.)

[50] *See Neal v. Comm'r, Soc. Sec. Admin.*, 782 F. App'x 722, 724 (10th Cir. 2019) (unpublished) (finding an ALJ did not make an improper lay interpretation of medical evidence where the ALJ did not interpret raw medical data or step into the shoes of a medical examiner).

[51] *See Chapo*, 682 F.3d at 1288 ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." (alternation in original) (citation omitted)).

Ms. C. also argues the ALJ failed to explain why she assessed no limitations in reaching, handling, or fingering.[52] But the ALJ did explain this, in her rejection of Mr. Childs' opinion that Ms. C. could never reach, handle, finger, or feel. She noted that other than "a few instances of right upper extremity sensory deficits," the record contained no evidence of weakness or "other issues."[53] The ALJ reasonably found this evidence supported only feeling limitations.[54] Ms. C.'s argument to the contrary is merely an invitation to reweigh the evidence, which the court cannot do.[55]

For all these reasons, Ms. C. has not shown the ALJ erred in her assessment of Ms. C.'s manipulative limitations.

**CONCLUSION**

The Commissioner's decision is affirmed.

DATED this 8th day of September 2026.

BY THE COURT:

Daphne A. Oberg

Daphne A. Oberg
United States Magistrate Judge

---

[52] (Opening Br. 8–9, Doc. No. 13.)

[53] (Tr. 20.)

[54] (*See* Tr. 17.)

[55] *See Langley*, 373 F.3d at 1118.